IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

IN RE:                                        )
                                              )
DISTANCE LEARNING SYSTEMS INDIANA,            )      CASE NO. 10-14617-JKC-11
INC.,                                         )
                  Debtor.                     )

## DEBTOR'S DISCLOSURE STATEMENT

**Counsel for the Debtor:**
Gary Lynn Hostetler
Courtney E. Chilcote
HOSTETLER & KOWALIK, P.C.
101 West Ohio Street, Suite 2100
Indianapolis, IN 46204
Tel: (317) 262-1001
Fax: (317) 262-1010
Email: ghostetler@hklawfirm.com
Email: cchilcote@hklawfirm.com

THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF INDIANA, INDIANAPOLIS DIVISION (THE "BANKRUPTCY COURT"), HAS APPROVED THIS DISCLOSURE STATEMENT (THE "DISCLOSURE STATEMENT"), WHICH APPROVAL DOES NOT CONSTITUTE A DETERMINATION OF THE MERITS OF THE ACCOMPANYING PLAN OF REORGANIZATION (THE "PLAN"). THE APPROVAL HEREOF MEANS THAT THE BANKRUPTCY COURT HAS FOUND THAT THIS DISCLOSURE STATEMENT CONTAINS ADEQUATE INFORMATION TO PERMIT THE CREDITORS OF ARTHUR GILT FARMS, LLC AS DEBTOR AND DEBTOR-IN-POSSESSION (THE "DEBTOR"), TO MAKE A REASONABLY INFORMED DECISION IN EXERCISING THEIR RIGHTS TO VOTE UPON THE PLAN.

THIS DISCLOSURE STATEMENT IS THE ONLY DOCUMENT AUTHORIZED BY THE BANKRUPTCY COURT TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES FOR THE ACCEPTANCE OR REJECTION OF THE PLAN. NO REPRESENTATION CONCERNING THE DEBTOR, ITS BUSINESS OPERATIONS, OR THE VALUES OF ITS ASSETS IS AUTHORIZED BY THE BANKRUPTCY COURT, EXCEPT AS EXPLICITLY SET FORTH HEREIN OR IN ANY OTHER DOCUMENT APPROVED FOR DISTRIBUTION BY THE BANKRUPTCY COURT.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR THE SECURITIES COMMISSIONER OF THE STATE OF INDIANA OR ANY OTHER STATE OR COMMONWEALTH. THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED HEREIN EXCEPT AS EXPRESSLY INDICATED HEREIN. THIS DISCLOSURE STATEMENT WAS COMPILED FROM INFORMATION OBTAINED BY THE DEBTOR FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE DEBTOR'S KNOWLEDGE, INFORMATION AND BELIEF.

THIS DISCLOSURE STATEMENT CONTAINS ONLY A SUMMARY OF THE PLAN. ALL CREDITORS AND OTHER INTERESTED PARTIES ARE ENCOURAGED TO REVIEW THE FULL TEXT OF THE PLAN AND TO READ CAREFULLY THIS ENTIRE DISCLOSURE STATEMENT, INCLUDING ALL EXHIBITS, BEFORE DECIDING TO VOTE EITHER TO ACCEPT OR REJECT THE PLAN.

THIS DISCLOSURE STATEMENT IS BOUND BY THE DEFINITIONS OF THE ACCOMPANYING PLAN UNLESS CONTEXT DICTATES OTHERWISE.

## I.  **INTRODUCTION**

Pursuant to § 1125 of the Bankruptcy Code, the Debtor hereby provides this Disclosure Statement to all of its known creditors to disclose that information deemed by the Debtor to be material, important, and necessary for its creditors to arrive at a reasonably informed decision in exercising their rights to vote for acceptance of the Plan, a copy of which accompanies this Disclosure Statement.  All terms defined in Article I of the Plan shall have the same meanings when used herein unless context dictates otherwise.

THIS DISCLOSURE STATEMENT AND THE PLAN ARE AN INTEGRAL PACKAGE AND BOTH MUST BE CONSIDERED BY THE READER SO THAT SHE OR HE MAY BE ADEQUATELY INFORMED

As a creditor, your acceptance is important.  For the Plan to be deemed accepted, of the ballots cast, creditors holding at least two-thirds in amount and more than one-half in number of the Allowed Claims of all impaired Classes must vote for the Plan.

**NO REPRESENTATIONS CONCERNING THE DEBTOR (PARTICULARLY AS TO ITS FUTURE BUSINESS OPERATIONS OR VALUE OF PROPERTY) ARE AUTHORIZED OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE WHICH ARE OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO THE DEBTOR'S COUNSEL, WHO IN TURN SHALL DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.**

**THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT. THE INFORMATION IS BASED UPON RECORDS KEPT BY THE DEBTOR. THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT INACCURACY, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE.**

## II.  **BACKGROUND OF THE DEBTOR**

Debtor is one of the nation's leading educational publishing firms established in 1999. With over 10,000 clients nationwide, Debtor offers customized educational solutions to distance

education for busy working adults. Its programs feature both study modules and optional tutoring. Courses are written and led by subject matter experts to assist adult learners in preparation for nationally standardized exams. By passing these exams, individuals may earn college credits transferable to thousands of colleges and universities across the United States as well as many international institutions. Through its alliances with various domestic and global universities, Debtor offers alternatives to classroom attendance for those interested in earning a college degree in nursing, business, science, technology and many other popular major areas of study.

### III.  OPERATIONS DURING THE CHAPTER 11 CASE

Debtor filed for relief under Chapter 11 of the Bankruptcy Code on September 28, 2010. Since that time, Debtor has operated as a debtor-in-possession. At the commencement of this Chapter 11 Case, the Debtor received authority to use its Cash Collateral upon which various Claim Holders had valid, enforceable and non-avoidable, liens and security interests.

Debtor has assumed two executory contracts for the collection of the majority of its contractual receivables. Further, pursuant to an order of the Court, Debtor sold certain contractual receivables to Universal Guardian Acceptance, LLC free and clear of all liens, claims and interests, with valid liens and encumbrances to such contracts attaching to the sale proceeds.

Debtor is current on its monthly reports which have been filed with the Bankruptcy Court and which can be viewed on the Clerk of the Court's website at www.insb.uscourts.gov. The monthly reports provide information regarding the Debtor's operations during the pendency of this Chapter 11 Case.

Debtor has remained current in its obligations to students and all other parties to certain licensing agreements and has maintained positive cash flow. Debtor has also remained current in its obligations to the Holders of Secured Claims.

These actions: (a) have allowed the Debtor to pay for operating expenses during the Chapter 11 Case and maintain its relationships with students, institutions of higher education, its employees, and its customers; (b) have allowed the Debtor to reorganize its operations; and (c) will allow the Debtor to continue to meet its operational obligations from Confirmation and beyond.

## IV.  SUMMARY OF THE PLAN

A copy of the Plan accompanies this Disclosure Statement. The Plan should be referred to for details concerning the treatment and classification of creditors and interest holders. The following summary is qualified in its entirety by the express provisions of the Plan.

### A.  Purpose of the Plan

The purpose of the Plan is to provide the Debtor with a capital structure that can be supported by cash flows from operations. The Debtor believes that the reorganization contemplated by the Plan is in the best interests of its creditors as a whole. If the Plan is not confirmed, the Debtor believes that it will be forced to liquidate under chapter 7 of the Bankruptcy Code. In that event, the Debtor believes that its creditors would realize a less favorable distribution of value, or in certain cases, no value at all, for their Claims and/or Equity Interests.

**B.**    **Classification and Treatment of Claims and Equity Interests**

**(1)    Summary**

A summary of the treatment of the various classes of claims follows:

| Class/Type of Claim or Equity Interest | Projected Claims/ Equity Interests | Plan Treatment of Class | Projected Recovery under the Plan | Impaired/ Unimpaired |
|---|---|---|---|---|
| Class 1: Administrative Claims (Court Costs and Professional Fees) | Professional/Trustee fees | Paid in full | 100% | Unimpaired |
| Class 2: Alternative Debt Portfolio, LLC Secured Claims | $19,626.74 as of date of filing | Disallowed | 100% | Impaired |
| Class 3: Jeanene Christy Secured Claims | $475,890.64 as of date of filing | Assumed by Reorganized Debtor | 100% | Impaired |
| Class 4: Universal Guardian Acceptance, LLC Secured Claims | $1,200,000.00[1] as of date of filing | Assumed by Reorganized Debtor | 100% | Unimpaired |
| Class 5: Allowed Non-Priority, Unsecured Claims | $2,188,707.36 | Paid from capital contribution by Derrick Christy to the Reorganized Debtor of in the amount of $75,000 | 0.5% - 3.4% | Impaired |
| Class 6: Equity Interest | Shareholders will receive no distributions | | 0% | Unimpaired |

---

[1] This number is contingent. It reflects the collective amount owing UGA as of date of filing, but given the nature of the debt (fluctuates daily pursuant to agreed percentage recovery on "good" receivables), this number represents an estimate.

(2)    **Treatment of Claims and Equity Interests**

The Plan classifies Claims and Equity Interests into six (6) separate Classes and provides

for their payment as follows:

Class 1: Administrative Claims (Court Costs and Professional Fees).    Class 1 is not impaired.  Except to the extent that the Debtor or Reorganized Debtor and a Holder of a Class 1 Allowed Claim agree to a different treatment, Class 1 Allowed Claim Holders will be Paid in Full, in Cash, upon the later of: (a) the Distribution Date; or (b) as soon as practicable after the Claim has become a Class 1 Allowed Claim.

Class 2: Alternative Debt Portfolio, LLC Secured Claims.    The Class 2 Claim shall be disallowed in its entirety and receive no distribution as it is not believed to be owed any money by the Debtor.

Class 3: Jeanene Christy Secured Claims. Class 3 is impaired.  The Class 3 Allowed Secured Claim shall be allowed in the amount listed in the Debtor's Schedules, plus all accrued interest.  As soon as practicable after the Effective Date, such Allowed Secured Claim shall be satisfied by execution by the Reorganized Debtor assuming ownership, possession and control of the assets currently owned, possessed and controlled by Debtor, of amended and restated loan documents in form and substance acceptable to such Reorganized Debtor and Jeanene Christy. The Holders Allowed Class 3 Claims shall be deemed to have waived and forever released the right to participate in any distributions to Class 5 Claims.

Class 4: Universal Guardian Acceptance, LLC Secured Claims. Class 4 is not impaired. The Class 4 Allowed Secured Claim shall be allowed in the amount listed in the Debtor's Schedules.  The Holders of Allowed Class 4 Claims shall be deemed to have waived and forever released the right to participate in any distributions to Class 5 Claims.  The Reorganized Debtor shall continue to be bound by the same terms, conditions and documents previously executed by the parties.

Class 5: Allowed Non-Priority, Unsecured Claims. Class 5 is impaired.  The Holders of a Class 5 Allowed Claim shall share Pro Rata in one or more distributions to be made on the Distribution Date and funded by the Christy Contribution.

Class 6: Equity Interest.  Class 6 is not impaired.  The Equity Interests of the pre-petition shareholders of the Debtor remain unchanged following Confirmation.

C.    **Distribution of Property and Administration of the Plan**

(1)    **Vesting of Property in the Debtor**

Except as otherwise provided in the Plan or the Confirmation Order, all of the assets,

properties and rights of the Debtor owned by the Debtor of every type and description, tangible,

5

intangible, wherever located, shall be transferred to and vested in the Reorganized Debtor free and clear of all liens, claims, rights of setoff, security interests, pledges, encumbrances, adverse rights of interest, covenants, charges, debts and contractually imposed restrictions, and all such liens, claims, rights of setoff, security interests, pledges, encumbrances, adverse rights of interest, covenants, charges, debts and contractually imposed restrictions shall be extinguished. Except as provided in the Plan or the Confirmation Order, all Causes of Action of the Debtor shall be transferred to the Reorganized Debtor and the Reorganized Debtor shall have the right to commence and pursue all Causes of Action.   Upon information and belief, those Causes of Action consist primarily of rights to collect accounts receivable owing at the time of Confirmation of the Plan.

      (2)      **Organizational Authorization**

The entry of the order confirming the Plan shall constitute authorization for the Debtor and/or Reorganized Debtor to take or cause to take all organizational actions necessary and appropriate to consummate and implement the Plan prior to and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to applicable non-bankruptcy law and the Bankruptcy Code, without any requirement of further action by the Debtor or Reorganized Debtor.  On or before the Effective Date, the Debtor shall be authorized and directed to execute and deliver the agreements, documents and instruments contemplated by the Plan.

D.      **<u>Executory Contracts</u>**

      (1)      **Treatment of Executory Contracts**

Except as otherwise provided in the Plan effective on and as of the Effective Date any and all Executory Contracts that exist between the Debtor and any party which: (a) have not expired or terminated pursuant to their own terms; (b) have not previously been assumed,

assumed and assigned, or rejected pursuant to an order of the Court on or prior to the Confirmation Date; (c) are not subject of pending motions to assume, or assume and assign, or reject as of the Confirmation Date or (d) have not been breached by any non-Debtor party thererto shall be rejected by the Debtor on the Effective Date. The Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute an order of the Court: (a) approving such assumption as of the Effective Date pursuant to §§ 365 and 1123(b)(2) of the Bankruptcy Code and this Article; (b) extending the time, pursuant to § 365(d)(4) of the Bankruptcy Code and this Article, within which the Debtor may assume, assume and assign, or reject such Executory Contracts through the date of entry of an order approving the assumption, assumption and assignment, or rejection of such Executory Contract; and (c) approving, pursuant to §§ 365(a) and 1123(b)(2) of the Bankruptcy Code, the rejection of the Executory Contracts pursuant to this Article.

### (2)    Cure of Defaults for Assumed Executory Contracts

The Reorganized Debtor will satisfy all undisputed cure and any other monetary defaults payments required by § 365(b)(1) of the Bankruptcy Code under any assumed Executory Contract, to the extent any such Executory Contract is in default (and to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law), or the counter-party to such Executory Contract has not waived any monetary amounts arising prior to the Petition Date, by: (a) the payment of such undisputed cure amounts in twelve equal monthly installments commencing on the Distribution Date and continuing on the same day of each month thereafter until Paid in Full; or (b) to the extent such cure amount is contested or otherwise disputed, the payment shall be in twelve equal monthly installments, unless otherwise ordered by the Court, commencing thirty days following the entry of a Final Order determining the cure amount and continuing on the same day of each month thereafter until Paid in Full.

7

Executory Contract cure obligations, if not previously determined by an order of the Court prior to the Effective Date, may be paid without further order of the Court if such cure amounts are agreed to by the Debtor and the counter-party to such an Executory Contract. To the extent the Debtor and the counter-party to an Executory Contract cannot agree as to a particular cure amount, then such amounts will be determined by the Court after notice and a hearing. The Debtor estimates the cure costs relating to assumed Executory Contracts will be *de minimis* as a result of the status of the Executory Contracts Debtor will assume.

### (3) Resolution of Objections to Assumption of Executory Contracts or Cure Payments

The Plan provides that any party objecting to: (a) the Debtor's proposed assumption of any Executory Contract; or (b) (i) the amount of any cure payments, if any (which is the only monetary cure amount, if any, that the Debtor shall be obligated to pay in connection with the assumption of any such Executory Contract unless the Court orders otherwise), (ii) the ability of the Debtor to provide "adequate assurance of future performance" (within the meaning of § 365 of the Bankruptcy Code) under the Executory Contract, or (iii) any other matter pertaining to the assumption or the cure payments required by § 365(b)(1) of the Bankruptcy Code, shall file and serve a written objection to the assumption of such Executory Contract or the cure payments, if any, that the Debtor propose to make in connection with such assumption and assignment on or before the deadline set by the Court for filing objections to Confirmation of the Plan. Failure to file an objection within the time period set forth herein shall constitute: (a) consent to the assumption of those Executory Contracts, including an acknowledgement that the proposed assumption provided adequate assurance of future performance; and (b) consent to the cure amount, if any.

To the extent that any objections to the assumption of an Executory Contract are based upon the assertion that the Debtor is unable to provide adequate assurance of future performance under such Executory Contract, the Court shall hear and determine such objection at the hearing on Confirmation of the Plan.

To the extent that any objections to the cure amounts are timely filed and served and such objections are not resolved between the Debtor and the objecting parties, the Court shall resolve such disputes at a hearing to be held at a date to be determined by the Court.  The resolution of such disputes shall not affect the Debtor's assumption of the Executory Contracts that are the subject of such a dispute but rather shall affect only the "cure" amount the Debtor must pay in order to assume such Executory Contract.  Notwithstanding the immediately preceding sentence, if the Debtor, in its sole discretion, determines that the amount asserted to be the necessary "cure" would, if ordered by the Court, make the assumption of the Executory Contract imprudent, then the Debtor may elect to reject the Executory Contract or seek an immediate hearing on the cure amount and reserve its right the reject the Executory Contract pursuant to this Article following the Court's decision.

### (4)    Indemnification Obligations

The Plan provides that, except for the indemnification obligations of the Debtor: (a) to its current and former officers, general partners or control parties from acts or conduct arising after the Petition Date; and (b) under any Executory Contract, that the Debtor assumes any obligation of the Debtor pursuant to its membership agreement, codes of regulation, applicable state law or specific agreements, or combination of the foregoing, to indemnify or reimburse a person with respect to all present and future actions, suits and proceedings, based upon any act or omission related to service with or for or on behalf of the Debtor, shall not survive Confirmation and shall be discharged in accordance with § 1141 of the

Bankruptcy Code, irrespective of whether such indemnification or reimbursement is owed in connection with an event occurring before, on or after the Petition Date.

**E.      Management of the Reorganized Debtor**

On the Effective Date, the Reorganized Debtor shall name the directors, officers and/or managers of the Debtor in their sole discretion and in accordance with applicable non-bankruptcy law.

**F.      Deadline to File Claims**

Those parties purporting to hold an Allowed Claim, as defined in the Plan, shall file a proof of claim if such party believes it holds a valid Claim and believes it was either listed incorrectly on the Debtor's petition and schedules, or believes their purported claim was omitted from the Debtor's petition and schedules altogether, on or before the deadline to be set by the Court. **Any party believing its Claim was correctly listed and scheduled on the Debtor's petition and schedules will <u>not</u> need to file a proof of claim.**

**G.      Objections to Claims**

The Debtor shall have the right, but not the obligation, to file objections to Claims.

**H.      Provisions of Classes Which Are Impaired and Do Not Accept the Plan**

Under the Bankruptcy Code, Claims in Classes which are impaired are entitled to vote on the Plan, unless the holder of such a Claim is an insider. Classes 2, 3 and 5 are impaired and may vote under the Plan.

Section 1129(b) of the Bankruptcy Code allows the Bankruptcy Court to confirm the Plan notwithstanding the failure of an impaired Class to vote in favor of the Plan if the Bankruptcy Court determines that the Plan does not discriminate unfairly and is fair and equitable with respect to each Class of Claims or Equity Interests that is impaired and has not accepted the Plan.

I.    **Release, Injunctive and Related Provisions**

(1)    **Exculpation**

Except as otherwise specifically provided in this Plan, none of the Debtor, Reorganized Debtor or any of such parties' employees, representatives, shareholders, advisors, attorneys, financial advisors, investment bankers or agents or any of such parties' successors and assigns, shall have or incur, and are hereby released from, any Claim, obligation, cause of action or liability to one another or to any Holder of a Claim or an Interest, or any other party in interest, or any of their respective officers, directors, shareholders, members and/or enrollees, employees, representatives, advisors, attorneys, financial advisors, investment bankers, agents, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the negotiation and pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, or any other prepetition or postpetition act taken, or omitted to be taken, in connection with, or in contemplation of the Debtor's restructuring or the Chapter 11 Case except for their gross negligence or willful misconduct, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities (if any) under this Plan.  Notwithstanding any other provision of this Plan, neither any Holder of a Claim or Interest, or other party in interest, nor any of their respective officers, directors, shareholders, members and/or enrollees, employees, representatives, advisors, attorneys, financial advisors, investment bankers, agents or affiliates, and no successors or assigns of the foregoing, shall have any right of action against any of the Debtor, Reorganized Debtor or any of such parties' employees, representatives, advisors, attorneys, financial advisors, investment bankers or agents or such parties successors and assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the negotiation and pursuit of

11

confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except for such Persons' gross negligence or willful misconduct.

### (2)    Preservation of Causes of Action

#### (a)    Retained Causes of Action

The Reorganized Debtor, pursuant to § 1123(b)(3), shall be entitled to the exclusive right, authority and discretion to institute, prosecute, abandon, settle, or compromise, as appropriate, any and all Causes of Action, except the Avoidance Actions which are expressly waived and released, whether arising before or after the Petition Date, in any court or other tribunal including, without limitation, in an adversary proceeding filed in this Chapter 11 Case or a related proceeding.  In deciding to waive Avoidance Actions, the Debtor investigated transfers within the 90 days prior to the Petition Date as well as transfers to insiders. This investigation revealed that there would be nothing to gain from pursuing any such Avoidance Actions in this Chapter 11 Case.  All parties are waiving the right to compel the Debtors to bring such Avoidance Actions or to bring such Avoidance Actions themselves except as otherwise specifically provided in the Plan.

#### (b)    Preservation of All Causes of Action Not Expressly Settled or Released

Unless a Cause of Action against a Person is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order the Debtor expressly reserve such Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after Confirmation based on the Disclosure Statement, the Plan or the Confirmation

Order, except where such Claims or Causes of Action have been waived, relinquished, released, compromised or settled in the Plan, the Confirmation Order or a Final Order. In addition, the Debtor and expressly reserve the right to pursue or adopt any Cause of Action not so waived, relinquished, released, compromised or settled that are alleged in any lawsuit in which the Debtor is a defendant or an interested party, against any Person or Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.  Any Person to whom the Debtor has incurred an obligation (whether on account of services, purchase or sale of goods or otherwise), or who has received services from the Debtor or a transfer of money or property of the Debtor, or who has transacted business with the Debtor, or leased equipment or property from the Debtor should assume that such obligation, transfer, or transaction may be reviewed by the Debtor subsequent to the Effective Date and may, to the extent not theretofore waived, relinquished, released, compromised or settled, be the subject of an action after the Effective Date, whether or not (i) such Person has filed a proof of claim against the Debtor in the Chapter 11 Case; (ii) such Person's proof of Claim has been objected to; (iii) such Person's Claim was included in the Schedules; or (iv) such Person's scheduled Claim has been objected to by the Debtor or has been identified by the Debtor as disputed, contingent, or unliquidated.

### (3)    Discharge of Claims

Except as otherwise provided herein or in the Plan: (a) the rights afforded herein and the treatment of all Claims herein, shall be in exchange for and in complete satisfaction, discharge and release of Claims of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, against the Debtor or any of its assets or property; (b) on the Effective Date, all such Claims against the Debtor shall be satisfied, discharged and released in full; and (c) all Persons shall be precluded from asserting against the Debtor, its successors or its assets or

property any other or further Claims based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date upon the Effective Date.

**(4)    Injunction**

Except as otherwise expressly provided in the Plan or obligations issued pursuant to the Plan, all Persons who have held, hold or may hold Claims against or Equity Interests in the Debtor are permanently enjoined, from and after the Effective Date, from: (a) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Equity Interest against the Debtor and its respective officers, directors, managers, shareholders and members, and the employees, agents, and professionals of each of the foregoing (acting in such capacity); (b) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against those parties listed in subparagraph (a) above; (c) creating, perfecting, or enforcing any encumbrance of any kind against those parties listed in subparagraph (a) above, or the property or estates of those parties listed in subparagraph (a) above; (d) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from those parties listed in subparagraph (a) above or against the property or estates of those parties listed in subparagraph (a) above with respect to any such Claim; and (e) commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim, Equity Interest, or Cause of Action released or settled under the Plan.

**J.    Reservation of Jurisdiction By the Bankruptcy Court**

The Plan provides that the Bankruptcy Court will retain jurisdiction over the Chapter 11 Case after Confirmation for various purposes as detailed in Article X of the Plan.

**K.    Amendment, Modification or Revocation of the Plan**

The Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan at any time prior to the entry of the

Confirmation Order. After the entry of the Confirmation Order, the Debtor may, upon notice, or hearing and an order of the Bankruptcy Court, amend or modify the Plan in accordance with § 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan. A Holder of a Claim or Equity Interest that is deemed to have accepted the Plan shall be deemed to have accepted the Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim or Equity Interest of such Holder.

**L.    Discharge of the Debtor.**

Except as otherwise provided in § 1141(d), the Plan, or the Confirmation Order, Confirmation of the Plan shall discharge the Debtor from any debt that arose before the Confirmation Date and any debt of a kind specified in §§ 502(g), (h) or (i) of the Bankruptcy Code.

## V.    LIQUIDATION ANALYSIS

Attached hereto as **Exhibit 1** is a liquidation analysis prepared by the Debtor which establishes that the Holders of Claims in impaired Classes will receive a distribution under the Plan greater than they would receive under a chapter 7 forced liquidation sale. The estimate of the amount of proceeds received from the liquidation of the Debtor's property and the cost of such liquidation is based upon the customary results of such sales and the experience of the Debtor's professionals in liquidating property.

## VI.    CONFIRMATION OF THE PLAN

The Bankruptcy Court will confirm the Plan only if all of the requirements of § 1129 of the Bankruptcy Code are met. Among the requirements for Confirmation are that the Plan: (1) is accepted by all impaired Classes of Claims or Equity Interests entitled to vote or, (2) if

rejected by an impaired Class, that the Plan "does not discriminate unfairly" and is "fair and equitable" as to such Class.

**A.  Acceptance of the Plan**

The Bankruptcy Court defines acceptance of the Plan by a Class of creditors as acceptance by creditors holding two-thirds (2/3) in dollar amount and a majority in number of the Claims in such Class (other than any such creditor designated under § 1126(e) of the Bankruptcy Code), but for that purpose only counts those creditors that actually cast ballots. Holders of Claims or Equity Interests that fail to vote are not counted as either accepting or rejecting the Plan.

**B.  Voting Claims Subject to a Pending Objection**

If the Debtor has objected to the Claim of a creditor, the Holder of such Disputed Claim is not entitled to vote on the Plan absent further order of the Bankruptcy Court.

**C.  No Unfair Discrimination/Fair and Equitable Test**

In the event that any impaired Class does not accept the Plan, the Bankruptcy Court may still confirm the Plan at the request of the Debtor if, as to each impaired Class which has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable" as to such class.

A plan under chapter 11 of the Bankruptcy Code "does not discriminate unfairly," within the meaning of the Bankruptcy Code, if the legal rights of a dissenting Class are treated in a manner consistent with the treatment of other Classes whose legal rights are substantially similar to those of the dissenting Class and if no Class of Claims or Equity Interests receives more than it is legally entitled to receive for its Claims or Equity Interests.

Under the Bankruptcy Code, "fair and equitable" has different meanings for secured and unsecured claims. With respect to a secured claim, "fair and equitable" means: (1) the

impaired secured creditor retains its liens to the extent of its Allowed Secured Claim and receives deferred Cash payments at least equal in value to the allowed amount of its Claim with a present value as of the Effective Date at least equal in value to such creditor's interest in the Debtor's interest in the property securing the creditor's Claim; (2) if property subject to the lien of the impaired secured creditor is sold free and clear of that lien, claim, interest or encumbrance, the lien, claim, interest or encumbrance attaches to the proceeds of the sale, and such lien, claim, interest or encumbrance proceeds are treated in accordance with clause (1) or (3) of § 1129(b)(2)(A) or (3) the impaired secured creditor realizes the "indubitable equivalent" of its Claim under the Plan.

With respect to an unsecured claim, "fair and equitable" means either: (1) each impaired unsecured creditor receives or retains property of a value, as of the Effective Date, equal to the amount of its Allowed Claim; or (2) the Holders of Claims or Equity Interests that are junior to the Claims or Equity Interests of the dissenting Class will not receive or retain any property under the Plan.

With respect to Equity Interests, "fair and equitable" means that each Equity Interest Holder: (1) will receive or retain property of a value, as of the Effective Date, equal to the greatest of (a) the allowed amount of any fixed liquidation preference to which such Holder is entitled, (b) any fixed redemption price to which such Holder is entitled, or (c) the value of such Equity Interest; or (2) the Holder of any Equity Interest that is junior to the Equity Interests of such Class will not receive or retain any property under the Plan on account of such junior interest.

This Plan "does not discriminate unfairly" because all similar Classes are treated consistently and no Class receives more under the Plan than that to which it is legally entitled.

17

D.    **Best Interests**

The Bankruptcy Code provides that the Plan will not be confirmed, regardless of whether or not anyone objects to Confirmation, unless the Bankruptcy Court finds that the Plan is in the "best interests" of all Classes of Claims and Equity Interests which are impaired. The "best interests" test will be satisfied by a finding of the Bankruptcy Court that either: (1) all Holders of impaired Claims or Equity Interests have accepted the Plan; or (2) the Plan will provide such a Holder that has not accepted the Plan with a recovery at least equal in value to the recovery such Holder would receive if the Debtor was liquidating under chapter 7 of the Bankruptcy Code.

As set forth below, the Plan is in the "best interests" of each Class of Claims and Equity Interests which is impaired under the Plan.

The starting point in determining whether the Plan meets the "best interests" test is a determination of the amount of proceeds that would be generated from the liquidation of the Debtor's assets in the context of a chapter 7 liquidation.  Such value must then be reduced by the costs of such liquidation, including costs incurred during the Chapter 11 Case and allowed under chapter 7 of the Bankruptcy Code (such as professionals' fees and expenses), a chapter 7 trustee's fees, and the fees and expenses of professionals retained by such a trustee.  The potential chapter 7 liquidation distribution with respect to each Class must be further reduced by costs imposed by the delay caused by conversion of the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code.  The net present value of a hypothetical chapter 7 liquidation distribution with respect to an impaired Class is then compared to the recovery in respect to such Class as provided for in the Plan. A comparison between the liquidation analysis attached as Exhibit 1 and the distributions under the Plan show

that the Plan provides for a distribution which is far greater than a distribution in the context of a hypothetical chapter 7 liquidation.

## E.    Feasibility

Section 1129(a)(11) of the Bankruptcy Code provides that a chapter 11 plan may be confirmed only if the Bankruptcy Court finds that such plan is feasible. A feasible plan is one which will not lead to a need for further reorganization or liquidation of the debtor.  The Debtor believes that the Plan is feasible because the Debtor will be able to make the cash payments required under the Plan by the capital contribution through its operations and will be able to generate sufficient cash flow to meet its ongoing obligations.

## VII.  TAX CONSEQUENCES OF THE PLAN

The federal income tax consequences of the Plan are complex and are subject to significant uncertainties. The Debtor has not requested a ruling from the Internal Revenue Service or an opinion of counsel concerning same.

**ACCORDINGLY, ANY PERSONS WHO MAY BE AFFECTED BY IMPLEMENTATION OF THE PLAN, INCLUDING CREDITORS AND EQUITY INTEREST HOLDERS OF THE DEBTOR, SHOULD CONSULT THEIR OWN TAX ADVISORS RESPECTING THE TAX CONSEQUENCES UNDER FEDERAL AND ANY APPLICABLE STATE, COMMONWEALTH, LOCAL OR FOREIGN LAW.**

## VIII. CONCLUSION

The Debtor believes that the Plan represents the best alternative for the Debtor, the Estate, and its creditors.  The Debtor urges all creditors entitled to vote to return their ballots accepting the Plan.

[SIGNATURE ON FOLLOWING PAGE]

Dated October 24, 2011

Distance Learning Systems Indiana, Inc.

By: _____
Name: _____
Title: _____

*Counsel to the Debtor*

HOSTETLER & KOWALIK, P.C.
101 West Ohio Street
Suite 2100
Indianapolis, IN  46204
(317) 262-1001

**EXHIBIT 1**

IN RE:  Distance Learning Systems Indiana, Inc.

<u>Liquidation Analysis</u>

<u>Assets</u>:

| | | | |
|---|---|---|---|
| 1. | Account Receivable ($2,076,026.06 at 13%) | $ | 269,883.39 |
| 2. | Cash | $ | 16,166.99 |
| 3. | Fixed Assets (Computers, Office Equip and Furniture) | $ | 9,674.26 |
| 4. | Other (Employee Receivable, Escrow MVP, Loan to Institute of Technology) | $ | 61,198.29 |
| | **TOTAL ASSETS:** | **$** | **356,922.93** |

<u>Secured and Admin Claims</u>:

| | | | |
|---|---|---|---|
| 1. | Jeanene Christy | $ | 475,890.64 |
| 2. | Universal Guardian Acceptance, LLC | $ | 1,200,000.00[1] <br>(as of date of filing) |
| 3. | Administrative Claims | $ | 20,000  (est.) |
| | **TOTAL SECURED AND ADMIN CLAIMS** | **$** | **1,695,890.00** |

<u>Unsecured Claims</u>:

| | | |
|---|---|---|
| Total Estimated Allowed Non-Priority Unsecured Claims (as of Petition Date) | $ | 2,188,707.35 |
| **FUNDS AVAILABLE TO UNSECUREDS** | **$** | **-0-** |
| **FUNDS AVAILABLE TO EQUITY** | **$** | **-0-** |

---

[1] This number is contingent.  It reflects the collective amount owing UGA as of date of filing, but given the nature of the debt (fluctuates daily pursuant to agreed percentage recovery on "good" receivables), this number represents an estimate.